[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage returnable to the Waterbury Superior Court. CT Page 5050
The parties were married at Wolcott, Connecticut on August 20, 1976 and have both resided in Connecticut for at least twelve months prior to the commencement of this action. There are no minor children issue of this marriage.
The court has the requisite jurisdiction to proceed to a judgment in this matter.
In addition to the evidence and testimony adduced at trial, the court has considered the criteria of Sections 46b-81 and46b-82 of the General Statutes as well as other statutes in reaching the findings and orders set forth herein.
The court finds that the allegation that the marriage of the parties has broken down irretrievably has been proven by the evidence.
At the time of trial the plaintiff-wife was 52 years old. She testified that her health was "okay, I think." She attended Wolcott High School for three years and then attended hairdressing school. She obtained a hairdressers license from the State of Connecticut but practiced that trade for only about one year. Throughout the marriage she occasionally worked cleaning houses. She testified that she only cleaned one house from the date of the commencement of this action to the time of trial. She also testified that she lacks office skills such as typing and computer operation. She has not had any other employment. She reported no gross or weekly income on her financial affidavit.
There was evidence and testimony by the plaintiff that during the marriage she was asked by her mother, Angeline Talachro, to "hold" approximately $14,000.00 of her mother's money and did so. She also testified that she, the plaintiff, used several thousand dollars of that money to take vacations with her sister and others to make up for the fact that the defendant failed and refused to take her on any extended vacation trips. She further testified that some of that money was used for marital expenses and that she felt the defendant should reimburse her mother. The court finds that the money "held" by the plaintiff was actually a gift to her by her mother and not evidence of any income potential of the plaintiff. Neither is it money to be ordered repaid by the defendant. Mother may have a right to seek reimbursement, but it is not in this action.
The plaintiff also testified that she drives an automobile, CT Page 5051 but usually restricts her driving to the Wolcott area because she becomes too nervous driving elsewhere. The parties have lived in the marital residence located in Wolcott since 1976. The home was built on property owned by the defendant-husband prior to the marriage. The plaintiff valued the residence at approximately $165,000.00 on her financial affidavit and the defendant valued it at $150,000.00. There is no mortgage or other encumbrance.
At the time of trial the defendant-husband was 55 years old and described his health as "okay.
The defendant retired from SNET in 1995 after 30 years employment with that company. His position when he retired was assistant construction foreman. He testified that he estimated his salary to be between $43,000.00 and $45,000.00 at the time of his retirement.
The defendant reported his gross weekly income to be $405.92. It consists of his pension from SNET in the amount of $388.62 plus a dividend of $17.30. He reported his net weekly income to be $365.90.
In addition to the marital residence, the parties listed other appreciable assets on their respective financial affidavits including 552 shares of SNET stock, an American Bank CD in the approximate amount of $21,000.00, a credit union IRA in the approximate amount of $28,000.00. The defendant also listed personal property consisting of a boat, an outboard motor, guns and a gun cabinet, as well as a car and a truck.
The defendant's pension from SNET was the subject of considerable evidence and testimony.
That pension was one of several offered to the defendant at the time of his retirement. He declined one pension which would have paid him approximately $231,000.00 lump sum, for the stated reason that the tax consequences were unfavorable. The one he selected included no survivorship benefits for his wife. He testified that he explained that to the plaintiff and she voluntarily signed a waiver of her pension rights. The consequence of her waiver was an additional 10% ($160.00) to the defendant per week. An additional consequence was the forfeiture of any survivorship pension payments to her if he predeceased her (with the exception of a one time payment of $75.00).
CT Page 5052 The plaintiff testified that while she did sign the waiver form, she did so at the insistence of the defendant, that he did not discuss the consequences of the waiver with her, and that had she known what the result would be she never would have signed it. Both parties testified that they had already begun to experience marital difficulties prior to the plaintiff's execution of that waiver. The court finds that the plaintiff's testimony regarding this issue is more credible than the defendants testimony. The court finds that the defendant unilaterally decided to arrange for a pension which paid him only a modest increase during his life and would pay nothing to his soon to be ex-wife if he predeceased her. While the court cannot restructure the defendant's pension, it can enter orders which compensate her for that loss.
The plaintiff offered expert testimony to the effect that at the time of the waiver, based on actuarial calculations, the plaintiff would have received $9,079.00 per year upon the death of the defendant. There was further testimony that at that rate, the present value of the survivorship benefit to the plaintiff was calculated to be $129,174.00. I response to cross examination, the witness further testified that said figures were arrived at by calculating what an annuity that paid $9,000.00 per year would have cost at the time of the waiver. The witness did concede that the plaintiff, obviously, would have received nothing had she predeceased the defendant and that the entire valuation was predicated upon actuarial data as it applied to the parties.
The witness further testified that one if one (1/3) third of the pension was accrued prior to the marriage, as per the evidence, then marital coverture would require a reduction of the current value by that fraction.
Based on that evidence, the court finds that the present value of the defendant's pension, lost to the plaintiff by the defendant's unilateral decision to forfeit survivorship pension benefits, is $86,116.00.
The court finds that while the defendant was not directly abusive to the plaintiff, he did grow increasingly self centered and remote from her. He provided little or no companionship or affection to her and became increasingly non-communicative upon his retirement. For whatever reason, he came to have little to do with her socially, sexually or otherwise during the several years CT Page 5053 prior to the commencement of this action. The court finds that the above-described conduct of the defendant was the primary cause for the breakdown of the marriage.
 ORDERS
I. DISSOLUTION OF MARRIAGE
Having found that the marriage of the parties has broken down irretrievably, the court hereby decrees that the marriage of the parties is dissolved and that they are single and unmarried.
II. PERIODIC ALIMONY
The court orders that the defendant pay to the plaintiff as periodic alimony the sum of $150.00 per week. This order shall continue until the earliest of the following events:
a. The death of either party.
b. The remarriage of the plaintiff.
c. Cohabitation by the plaintiff as that term is defined by statute.
III. BY WAY OF PROPERTY DISTRIBUTION
A. REAL PROPERTY
The defendant shall convey to the plaintiff all of his right, title and interest in and to the marital residence located at 1230 Spindle Hill Road, Wolcott. The plaintiff shall be responsible for all expenses related to said real property and shall hold the defendant harmless for all such claims.
B. PERSONAL PROPERTY
The parties shall divide equally all personal property listed in their respective financial affidavits except as per the following orders:
 1. SNET STOCK
The court orders that the first 74 shares of said stock or an equivalent number of shares if there has been a stock split CT Page 5054 since the time of trial are awarded to the defendant. The remaining number of shares — including shares resulting form a stock split — shall be shared equally by the parties.
 2. MOTOR VEHICLES
The plaintiff shall have sole interest in and to the 1989 Pontiac automobile and the defendant shall have sole interest in the 1986 Ford pick-up truck. Each party shall hold the other harmless from all debts or obligations related to said vehicles.
 3. OTHER PROPERTY
The defendant shall retain the boat, the outboard motor and the guns and gun cabinet listed in his financial affidavit.
IV. MISCELLANEOUS ORDERS
1. The defendant shall be entitled to deduct the interest expenses related to the marital home on his income tax returns for the years 1997 and 1998.
2. The defendant shall cooperate with the plaintiff's efforts to obtain medical insurance through the defendant's employment under COBRA provisions. If such program is not available to the parties, the defendant shall contribute one (1/2) half of the cost incurred by the plaintiff for basic medical insurance for three years from the date of this judgment.
3. The defendant shall continue to maintain the $50,000.00 life insurance policy listed on is financial affidavit and shall list the plaintiff as the sole beneficiary on said policy for as long as the defendant is obligated to pay alimony to the plaintiff
4. Each party shall be responsible for their respective counsel fees incurred as a result of this action.
By the Court,
Joseph W. Doherty Judge CT Page 5055